1   LINDA CLAXTON, State Bar No. 125729
    linda.claxton@ogletreedeakins.com
2   ERIC MATHISEN, Indiana Bar No. 19475-71
    Eric.mathisen@ogletreedeakins.com
3   OGLETREE, DEAKINS, NASH,
    SMOAK & STEWART, P.C.
4   633 West Fifth Street, 53rd Floor
    Los Angeles, California 90071
5   Telephone:   (213) 239-9800
    Facsimile:   (213) 239-9045
6
    Attorneys for Defendants
7   SUN LIFE ASSURANCE COMPANY OF CANADA,
    AND COMMUNITY HOSPITALS OF CENTRAL CALIFORNIA
8   DBA COMMUNITY MEDICAL
    CENTERS EMPLOYEE BENEFIT PLAN
9

10              **UNITED STATES DISTRICT COURT**

11            **EASTERN DISTRICT OF CALIFORNIA**

12

| | |
|---|---|
| 13  LAURA WILLIAMS, | Case No. 1:08-CV-00405-AWI-DLB |
| 14            Plaintiff, | **DEFENDANTS' RESPONSE TRIAL BRIEF** |
| 15        v. | |
| 16  SUN LIFE ASSURANCE COMPANY OF | Date:  February 3, 2010 |
| 17  CANADA, COMMUNITY HOSPITALS | Time: 9:00 a.m. |
|     OF  CENTRAL  CALIFORNIA  dba | Room: 2 |
| 18  COMMUNITY  MEDICAL  CENTERS | |
| 19  EMPLOYEE BENEFIT PLAN and DOES | |
|     1-10, | |
| 20 | |
| 21            Defendants. | |
| 22 | |

23   //

24   //

25   //

26   //

27

28

1    The administrative record facts and evidence set forth in Defendants' Trial Brief

2    [Docket 54] confirmed that the decision to deny Laura Williams' ("Williams" or

3    "Plaintiff") claim was correct.  Williams' inability to refute the propriety of the claim

4    decision is demonstrated by her resorting to alleged facts that are not before the court or

5    part of the agreed record.  Williams also attempts to avoid her burden of proof and

6    obligation to provide proof of her total disability.  Williams' brief spends much time

7    focusing on the handling of her claim and alleged conflicts of interest.  However, she is

8    well aware that under a *de novo* standard of review, Defendants' conduct in adjudicating

9    the claim is irrelevant. *Abatie v. Alta Health & Life Ins. Co.,* 458 F.3d 955, 963 (9th Cir.

10   2006); *Hawley v. Life Ins. Co. of North America*, 2009 U.S. Dist. LEXIS 69443, *25 (N.D.

11   Cal 2009).  Williams' extensive discussion of irrelevant evidence is an attempt to mask the

12   lack of evidence in the record supporting her claim.   Notwithstanding the fact that

13   Williams' opening/response brief [Docket 56] did not disprove the propriety of the claim

14   denial, Defendants provide this response to Williams' brief.

15   ## A. WILLIAMS' IMPROPER EVIDENCE SHOULD BE STRICKEN

16   Williams correctly stated that the parties agreed to submit this case for decision after

17   the filing of trial briefs on the **administrative record** which the parties have filed. [Docket

18   56, p. 1][1]  The court has also previously stated that its "purpose is to determine whether the

19   information **before the claims administrator at the time benefits were denied** reasonably

20   indicated that Plaintiff was not disabled at the time benefits were denied." [Docket 47, p. 3]

21   (emphasis added); *See, Mongeluzo v. Baxter Travenol Long Term Disability Benefit Plan*, 46

22   F.3d 938, 943-944 (9th Cir. 1995).  Recognizing that the record evidence does not prove her

23   entitlement to long-term disability benefits, Williams repeatedly referenced and relied upon

24   specific facts outside the administrative record.  *See*, Docket 56, pp. 4:16 fn. 1; 7:20-21 fn.

25   2; 8:26-28; 9:16 fn. 3 ("Extraneous Facts").

26   Williams does not even claim that the Extraneous Facts (some of which did not

27

28   [1] *See, also* Scheduling Order [Docket 52] ("The parties agree that this matter is appropriate for resolution on the administrative record.")

occur until after the claim denial) were part of the record before Sun Life Assurance Company of Canada ("Sun Life") at the time of its final decision. In addition, the documents were never filed with the court or produced to Defendants' counsel.[2]  The court should disregard and strike the Extraneous Facts referenced by Williams in violation of the parties' agreement, the Scheduling Order, her Initial Disclosure, the court's prior rulings, and Ninth Circuit precedent.[3]

## B. WILLIAMS HAS NOT CARRIED HER BURDEN OF PROOF

The policy required Williams to "provide proof of continued Total or Partial Disability" to Sun Life at her expense. [R. 68]  The proof of claim that Williams was obligated to provide "includes, but is not limited to, Hospital records; Physician records; Psychiatric records; X-rays, narrative reports, or other diagnostic testing materials . . ." [R. 86]  The courts in this Circuit have also confirmed that a claimant bears the burden of proving entitlement to long-term disability benefits. *Ross v. Prudential Ins. Co. of America*, 304 Fed. Appx. 502 (9th Cir. 2008) ("The Plan . . .puts the burden of proving limitations squarely on the claimant and provides only that an IME may be sought. . ."); *Jordan* v. *Northrop Grumman Corp. Welfare Benefit Plan*, 370 F.3d 869 (9th Cir. 2004); *Thomas v. Silgan Containers Corp.,* 2001 U.S. Dist. LEXIS 7088, *11 (N.D. Cal. 2001).

Williams waited until eight months after she stopped working before submitting her claim forms. [R. 184]  By January 4, 2007, Williams still had not provided an attending physician statement ("APS") from a physician certifying her disability. [R. 360]  She was granted an additional thirty days to provide the information. [Id.]  Williams must have encountered difficulty in finding a physician willing to support her claim, because an APS was still outstanding as of February 12, 2007. [R. 360]  Ultimately,  the only APS form

---

[2]  Williams' Initial Disclosure identified "those records previously produced by Defendant which Plaintiff understands to constitute the Administrative Record including . . .Plaintiff's medical records and correspondence.  Plaintiff intends to request that the court augment the Administrative Record to also include the declaration of Rhea Wong, M.D." [Docket 17, p. 4]

[3]  If the court does not strike the Extraneous Facts, the matter should be remanded to Sun Life for a new review and consideration of the additional facts and evidence. As more fully discussed below, Williams' attempt to prejudice the court and Defendants with new evidence cannot result in an award of benefits.

1    submitted was from Dr. Wong. [R. 379 – 382]

2        Williams recognizes that she cannot meet her burden of proof based upon the record

3    evidence.  Therefore, she attempts to gloss over her lapse and remarkably suggests that her

4    failure to comply with the policy terms and her legal obligations should result in a reversal

5    of Sun Life's decision.[4]  Williams also complained that Sun Life did not obtain records

6    from the "numerous providers" identified in her appeal letter. [Docket 56, p.20:17-19]  In

7    addition to improperly shifting the burden of proof to Sun Life, the contention that Sun Life

8    did not obtain or receive records from the individuals listed in her appeal letter is false. [R.

9    420 – 421]  Sun Life had the records from Dr. Najafi, Dr. Kalamkaraian, and Dr. Wong up

10   through and well beyond the elimination period when it began evaluating Williams' claim.

11   Sun Life also had records from Dr. Simons and Dr. Park that Williams provided with her

12   letter. [Id.]  Williams never suggested that there were additional medical records or other

13   information that Sun Life should consider.[5] [Id.]

14       The complaint that Sun Life did not obtain records after 2007 is also a red herring,

15   because the primary issue was whether Williams qualified for long-term disability benefits

16   by proving total disability throughout the entire elimination period (March 15, 2006 –

17   September 10, 2006). [R.65]  Williams' failure to satisfy the policy's elimination period

18   and the termination of her employment resulted in termination of her coverage as of March

19   16, 2006. [R. 80, 453 – 454]  Thus, coverage terminated prior to Williams' surgery on July

20   12, 2007, and she could not recover long-term disability benefits even if she was

21   temporarily unable to work after the surgery. [R. 453 – 454]

22              **C. SUN LIFE'S DECISION WAS CORRECT**

23       Williams has not effectively countered the evidence set forth in Defendants' opening

24   Trial Brief demonstrating that the claim denial was correct.  That evidence will not be

25   ───────────────────────

26   [4] For example, Williams blames Sun Life for not requesting records from 2007 and points
     to facts not in the record. [Docket 56, pp. 4 fn. 1; 8:26-28; p fn. 3]

27   [5] Williams knew what information Sun Life reviewed in deciding her claim and she was
     advised that she could request a free copy of all documents, record, and other information relevant
     to her claim. [R. 407]  Sun Life even offered Williams an opportunity to submit additional

28   information after the final claim decision. [R. 90]

1    unnecessarily repeated, but following is a summary and further explanation of the facts.

2         Contrary to Williams' assertions, the medical experts with whom Sun Life consulted

3    had more information than any of the attending physicians.   Dr. Sarni reviewed all

4    information on file at the time of his reviews in February 2007. [R. 388, 399]  Dr. Langa

5    reviewed all of the file information including the appeal letter and documents from

6    Williams.[6]   Dr. Langa noted the MRI reports and findings and the fact that Dr. Wong

7    rarely, if ever, actually performed an exam of Williams. [R. 439 – 440]  Dr. Langa offered

8    specific and detailed opinions unlike the general opinions included in the attending

9    physicians' records.  Dr. Langa also acknowledged that Williams would have experienced

10   difficulty sitting continuously for prolonged periods of times.  However, prior to July 12,

11   2007, she was capable of performing sedentary work if: 1) allowed to change positions as

12   necessary; 2) not required to sit for longer than forty-five minutes at a time; and 3) not

13   required to sit more than six out of eight hours a day. [R. 442]  These limitations and

14   restrictions were consistent with the abilities noted by Dr. Wong and Williams. [R. 308,

15   380, 395]

16        Vocational expert Robert Violetta performed an occupational review to determine

17   whether Williams could perform her occupation with the restrictions and limitations

18   identified by Dr. Langa. [R. 445-449]   His opinion that Williams' occupation could be

19   performed with such restrictions and limitations is uncontradicted. [R. 445]

20        The opinions of Dr. Sarni and Dr. Langa should be given greater weight than the

21   attending physicians' opinions because they had the ability to observe the contradictions

22   and inconsistencies that Williams' physicians did not see.  For example, Williams told Dr.

23   Wong that the September 2006 injection helped and "initially she felt quite a bit better, but

24   then her radicular leg pain slowly returned." [R. 304]  Williams later told her physicians

---

25        [6] Dr. Langa did note that the March 30, 2007, consultation with Dr. Simons was
26   inadvertently left out of the records she received. [R. 90, 440] Dr. Langa felt that she had enough
     contemporaneous information to answer the referral questions, and she was aware that Dr. Simons
27   had recommended surgery. [Id.] Dr. Simons was not seen until March 30, 2007, and he did not
     offer any opinion about Williams' restrictions and limitations during or around the elimination
28   period.

1  and Sun Life that the injections provided no relief. [R. 203, 279, 395]  On November 7,
2  2006, Dr. Wong noted that a change in Williams' medication "greatly improved her pain."
3  [R. 227]  Williams later contradicted Dr. Wong's medical record note and claimed that she
4  did not state the new medication helped quite a bit. [R. 410]  Drs. Sarni and Langa would
5  also have seen that during the elimination period Williams' condition "relented for a
6  while," and that she was noted as being in "**mild** distress and discomfort" during actual
7  examinations. [R. 203, 286] (emphasis added).   In contrast to the global information of Dr.
8  Sarni, Dr. Langa, and Sun Life, Williams' physicians were not even familiar with the
9  material and substantial duties of her occupation. [*See, e.g* R. 382]

10     Williams' brief and evidence focuses on establishing that she had a medical
11  condition or injury.  However, simply because "a person has a true medical diagnosis does
12  not by itself establish disability." *Jordan*, 370 F.3d at 880.   On the real issue, the evidence
13  supports Sun Life's determination that, despite discomfort and the need to change positions,
14  Williams could perform the material and substantial duties of her occupation until July 12,
15  2007.

16              **D. DR. WONG'S REVISED OPINIONS ARE NOT CREDIBLE**

17     Dr. Wong is the only attending physician who offered any specific opinions about
18  Williams' restrictions and limitations.   The APS completed by Dr. Wong identified
19  subjective symptoms of severe leg pain.  There was no indication of problems, complaints,
20  or restrictions due to the medication being used by Williams. [R. 379 – 381]  Dr. Wong
21  identified the following abilities in a normal day:

22
23  1. Stand/Walk ☐ None  ☒ 1 - 4 hours  ☐ 4 - 6 hours  ☐ 6 - 10 hours
24  2. Sit ☒ 1 - 3 hours  ☐ 3 - 5 hours  ☐ 5 - 10 hours
    3. Drive ☒ 1 - 3 hours  ☐ 3 - 5 hours  ☐ 5 - 10 hours
25
26  She opined that Williams could lift up to ten pounds and "**work an 8 hr. day**" with the
27  noted restrictions. [R. 380] (emphasis added).  Dr. Wong also certified that Williams was
28  capable of "clerical/administrative (sedentary*) activity." [Id.]   No cardiac or mental

impairments were identified. [R. 381]   Dr. Wong did not add any pages to the APS explaining her opinion.   Nor did she add any information or comments in the remarks section.

Dr. Wong executed a declaration eighteen months after she prepared her APS.  She indicated in her declaration that she determined Williams was unable to perform her "job duties as a rehabilitation scheduler" in March 2006. [RS. 1]  It is unclear how she made that determination when, as of February 1, 2007, Dr. Wong had not reviewed the material and substantial duties of Williams' job. [R. 382].  Dr. Wong declared that Williams could only sit and drive for a total of one to three hours during an eight hour period. [RS. 2 ¶ 5]  She did not make any clarifications or amendments to the statement in the APS that Williams could also stand/walk for one to four hours.  Nor did she indicate any confusion over her statements in the APS that Williams could work eight hours per day and could perform clerical/administrative activity.  Finally, Dr. Wong added a completely new opinion, that Williams was unable to work due to her medications, which was never part of her APS or any of her treatment notes. [Id. ¶ 6]

If Dr. Wong believed her intentions had been misunderstood by Sun Life, she surely would have clarified all of her previous statements that she felt were incorrect or misunderstood.  However, Dr. Wong made further changes and retractions to her APS opinions in October 2009. [RS. 6]  She claimed for the first time that Williams could only sit/drive and stand/walk for a combination of up to four hours and that it was never her intention to suggest otherwise. [Id.]  Dr. Wong still did not explain why she offered opinions during the claim review process that Williams could "work an 8 hr. day with the

above restrictions" and was "**capable** of clerical./administrative work." [R. 380] (emphasis added).  The only reasonable conclusion is that Dr. Wong's initial opinions, as understood by Sun Life and Dr. Langa, were correct.  Her two subsequent retractions were simply attempts to help Williams obtain long-term disability benefits by changing the historical facts.

## E. MEDICATION DID NOT PRECLUDE WILLIAMS FROM WORKING

Williams did not mention any impairment or limitations as a result of her medications when she was interviewed by Sun Life. [R. 395-396]   In fact, the administrative record through the date of Sun Life's final decision was devoid of any medical opinion that Williams was impaired or unable to work as result of her medication use.  *See*, *Hawley*, 2009 U.S. Dist. LEXIS 69443, *40-41 (The plaintiff's claim of disability from medication use was not credible when his treating physician never noted any debilitating effects from medication over the years of treatment).  To the contrary, there is evidence that Williams had previously been able to perform her job while using Vicodin (the strongest of the medications used by Williams). [R. 461]   The belated claim that Williams could not work as a result of her medications is not credible.

## F. WILLIAMS' REMEDY, IF ANY, IS A REMAND TO SUN LIFE

Sun Life's decision should be upheld and judgment should be entered in favor of Defendants.  However, even if the court does not enter judgment in favor of Defendants, Williams request for an award of benefits is not appropriate.  The appropriate remedy, if any, for Williams is a remand to Sun Life for a review and consideration of all the evidence if the court does not agree with or has questions regarding the claim decision. *Kistler v.*

*Financial American Group Long Term Disability Plan*, 35 Fed. Appx. 516, 518 (9th Cir. 2002); *Saffle v. Sierra Pacific Power Company Bargaining Unit Long Term Disability Income Plan*, 85 F.3d 455, 460 (9th Cir. 1996); *Patterson v. Hughes Aircraft Co.,* 11 F.3d 948, 951 (9th Cir. 1993).  There are significant, additional facts and evidence before the court and advanced by Williams that were not part of the record before Sun Life when it decided the claim. [*See*, RS. 1 – 6; Docket 56, pp. 4:16 fn. 1; 7:20-21 fn. 2; 8:26-28; 9:16 fn. 3]  The additional information and evidence includes:

- Dr. Wong's claim that Williams could only sit and drive for a total of one to three hours during an eight hour period. [RS. 2 ¶ 5]
- Dr. Wong's claim that the medication used by Williams rendered her unable to work. [Id. ¶ 6]
- Dr. Wong's further revised opinion that Williams could not stand/walk for four hours and sit/drive for one to three hours during an eight hour period.  In other words, Williams could not sit, drive, stand, or walk for more than a total of hour hours during an eight hour period. [RS. 6]
- A second EMG study that was conducted on March 22, 2007. [Docket 56, p. :16 fn. 1]
- Information that Williams had back surgery performed on August 12, 2008. [Id. at 7:20-21 fn. 2]
- Information that Williams received further treatment by Dr. Birnbaum in 2007. [Id. at 8:26-28, 9:16 fn 3]
- Information that Williams continued to be treated by Dr. Wong after 2006, and Dr. Wong continued to believe that Williams was unable to perform her usual job duties. [Id. 9:16 fn. 3]
- An addendum report from Dr. Langa. [RS. 4-5]

The new information directly impacts the opinions of the only physician who certified Williams' claim for total disability.  If the court believes that Sun Life misconstrued the APS and opinions of Dr. Wong based upon the information now available, the only appropriate remedy is a remand. *See*, *Saffle*, 85 F.3d at 461 (the district court was instructed to remand the case to the benefit committee where the court found that

DEFENDANTS' RESPONSE TRIAL BRIEF

the committee "misconstrued the plan language and applied the wrong standard.").

Williams vigorously complains that there was additional information, some of which was listed above, that should have been obtained and considered.  She has thrust Extraneous Facts before the court without any request for leave to do so.  If the court does not strike the Extraneous facts or decides that further information should have been obtained and reviewed, the case must be remanded for review and consideration of such information.  Consistent with the discussion in Section G, the court could consolidate the remand by ordering a review under the any gainful occupation definition in the event the new information results in Sun Life's determination to award benefits for the first twenty-four months.

## G. THE COURT CANNOT AWARD MORE THAN 24 MONTHS OF BENEFITS

Defendants do not believe the court will reach this issue because the claim denial should be upheld.  However, out of an abundance of caution, Defendants note that Williams has not provided any legal authority for her argument that the court could award benefits past the twenty-four month "own occupation" period.  The only case cited by Williams confirmed that the court must remand the matter back to Sun Life for a review and determination of whether Williams was totally disabled from any gainful occupation as of September 11, 2008 when the policy definition and test changed.  *See Prado v. Domecq*, 2008 WL 191985, *9 (N.D. Cal. 2008).

Williams' suggestion that there is sufficient information in the administrative record for the court to make the any gainful occupation determination is factually and legally incorrect.  The latest medical records in the administrative record are from July 2007 –

more than one year before the policy definition change.  The July 2007 record included an operative report, but there are no progress reports or information about Williams' status after the surgery.  Williams also claims in her Extraneous Facts that she had another surgery in 2008.  Sun Life never received any surgical or rehabilitation records from 2008.  In fact, Defendants have never received or reviewed any medical records after July 2007.  Nor have they had the opportunity to conduct an investigation into Williams' functional and vocational activities after her surgeries and around the time of the policy's change in definition.  In sum, there is no decision or administrative record for the court to review on this issue.  The court must remand the matter for a determination by Sun Life if it reaches this issue. *Saffle*, 85 F.3d at 460.

Williams incredously argues and speculates about issues and conflicts that may arise from the Plan's change in insurance carriers.  She fails to cite any legal authority or policy provision to support her unfounded allegations.  Obviously, the Plan and policy terms would govern the effect of any such change in funding.  Williams also fails to explain why a remand and review would be "impractical."  The result and impact on Williams would be no different than it would have been for a claimant who was receiving benefits at the time the Plan changed insurers.  The court cannot ignore the policy terms and requirements and well established precedent based on Williams' wild speculation and conjecture.

1
2
### H. CONCLUSION

3       Based upon the foregoing facts and authority, judgment should be entered in favor of

4  Defendants.  Alternatively, the matter should be remanded to Sun Life.

5
   DATED:  January 15, 2010                    OGLETREE,  DEAKINS,  NASH,  SMOAK  &
6                                              STEWART, P.C.

7

8                                              By: ___s/ Eric P. Mathisen_____
9                                              Linda Claxton
                                               Eric P. Mathisen
10                                             Attorneys for Defendants

11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1

**CERTIFICATE OF SERVICE BY UNITED STATES MAIL**

2

STATE OF INDIANA, COUNTY OF PORTER

3

     I am employed in the County of Porter, State of Indiana; I am over the age of 18 years and not a party to this action.  My business address is 225 Aberdeen Drive, Suite F, Valparaiso, IN 46385.

4

5

     On January 15, 2010, I served the following document(s) described as:

6

**DEFENDANTS' TRIAL BRIEF**

7

on the persons below as follows:

8

STEVEN MICHAEL MCQUILLAN

9

JACOBSEN     HANSEN     NAJARIAN     AND MCQUILLAN

10

1690 WEST SHAW AVENUE
SUITE 201

11

FRESNO, CA 93711-1073
559-448-0400

12

13

     I enclosed the documents in a sealed envelope or package addressed to the persons at the addresses as indicated above and placed the envelope or package for collection and mailing, following our ordinary business practices.   I am readily familiar with this business's practice for collecting and processing correspondence for mailing.  On the same day that correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United State Postal Service, in a sealed envelope or package with postage fully prepaid.

14

15

16

     I am employed in the county where the mailing occurred.  The envelope or package was placed in the mail at Valparaiso, Indiana.

17

18

     I declare that I am employed in the office of a member of the Bar of this Court at whose direction the service was made.  I declare under penalty of perjury under the laws of the United States of America that the above is true and correct.

19

20

     Executed on January 15, 2010, at Valparaiso, Indiana.

21

22

Eric P. Mathisen                                 s/ Eric P. Mathisen

23

Type Name                                         Signature

24

25

26

27

28

8107213_2.DOC